**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 20-4256, 20-4285        Caption [use short title]

**Motion for:** dismiss as moot

Set forth below precise, complete statement of relief sought:

Intervener Competitive Enterprise Institute and FreedomWorks

Foundation move to dismiss this case as moot.

NRDC v. U.S. DOE; California v. U.S. DOE

**MOVING PARTY:** Competitive Enterprise Institute and FreedomWorks    **OPPOSING PARTY:** Sierra Club, Consumer Federation of America, et al.

☐ Plaintiff      ☐ Defendant

☐ Appellant/Petitioner      ☐ Appellee/Respondent

**MOVING ATTORNEY:** Devin Watkins        **OPPOSING ATTORNEY:** Timothy D. Ballo

[name of attorney, with firm, address, phone number and e-mail]

Competitive Enterprise Institute        Earthjustice, Suite 1000, 1001 G Street, NW

1310 L Street NW, 7th Floor, Washington, DC 20005      Washington, DC 20001

Phone: 202-331-2278 Email: devin.watkins@cei.org      Phone: 804-380-9945 Email: tballo@earthjustice.org

Court- Judge/ Agency appealed from: Petition for Review of two U.S. Department of Energy Rules

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency:_____

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date:_____

**Signature of Moving Attorney:**

Devin Watkins    Digitally signed by Devin Watkins Date: 2024.01.18 19:08:25 -05'00'    **Date:** 1/17/2024      Service : ☑ Electronic ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al., <br><br> Petitioners, <br> v. <br> U.S. DEPARTMENT OF ENERGY, et al., <br> Respondents. | Civil Action No. 20-4256 |
| STATE OF CALIFORNIA, et al. <br><br> Petitioners, <br> v. <br> U.S. DEPARTMENT OF ENERGY, et al., <br> Respondents. | Civil Action No. 20-4285 |
| COMPETITIVE ENTERPRISE INSTITUTE and FREEDOMWORKS FOUNDATION, <br> Intervenors. | |

## <u>INTERVENOR'S MOTIONS TO DISMISS</u>

The Competitive Enterprise Institute and FreedomWorks Foundation hereby move to dismiss this litigation as moot. The rules for which the petitions for review were sought are no longer in effect, and the Fifth Circuit opinion for which this case was held in abeyance chose not to vacate the repeal.

We have been informed that the National Resources Defense Council, the Sierra Club, the Consumer Federation of America, and the Massachusetts Union of Public Housing Tenants oppose this motion and plan to file a response. Other parties have not informed us if they support or oppose this motion or if they plan to file a response.

This litigation challenged two DOE final rules: (1) the creation of a new, faster class of dishwasher models on October 30, 2020, 85 FR 68723, and (2) the creation of new, faster classes of clothes washer and clothes dryer models issued on December 16, 2020, 85 FR 81359. A petition for review challenging those rules was filed in this Court on December 29, 2020. ECF No. 1.

On Jan. 20, 2021, President Biden issued an executive order to DOE to reconsider the creation of these new product classes. Order No. 13,990, 86 Fed. Reg. 7037 (Jan. 20, 2021). Given that executive order, DOE moved on February 9, 2021, to hold this litigation in abeyance while DOE reconsidered the rules at issue. On February 10, 2021, that motion was granted. ECF 37-38.

On January 19, 2022, DOE issued a new final rule that revoked both the October 30, 2020 and December 16, 2020 rules at issue in this litigation. 87 FR 2673. This action by DOE highlighted that that this litigation might have already become moot. Nonetheless, even though the rules at issue in this litigation had been revoked, petitioners moved on April 18, 2022, to hold this case in abeyance during related litigation in the Fifth Circuit. ECF. No. 106. The basis for this motion was the possibility that the final rule revoking the 2020 rules at issue could itself be vacated in litigation in the matter captioned *Louisiana v. DOE*, 5th Cir. Case No. 22-60146 (Mar. 17, 2022). The motion for abeyance stated its basis: "Given the possibility that the final rule rescinding the dishwasher product class is invalidated through that challenge, resulting in the reinstatement of the legally deficient short-cycle product class rule which petitioners have challenged, petitioners request that

2

the Court extend the abeyance in this matter pending the resolution of that challenge in order to preserve their challenges to the original dishwasher short-cycle product class rule." Unopposed Motion To Continue Abeyance During Related Litigation, ECF 105 (filed April 18, 2022).

The case for which this litigation is being held in abeyance for *Louisiana v. DOE*, 5th Cir. Case No. 22-60146 (Mar. 17, 2022), has now been decided by the Fifth Circuit. The opinion of that court is attached to this motion. The repeal of the 2020 rules was not vacated. Instead, the court remanded the repeal rule back to the agency. As the repeal of the 2020 rules were not vacated, the January 19, 2022 rules remain in effect until DOE finishes its remanded reconsideration.

Given this state of affairs, this litigation is moot, for a case is moot "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). The revocation and replacement of the 2020 rules created the impossibility that such mootness requires, which is why this Court granted DOE's motion to hold this case in abeyance pending reconsideration of the rules at issue.

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015) (per curiam) (internal quotation marks and citation omitted). The test for such mootness is whether "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably

3

eradicated the effects of the alleged violation." *See Granite State Outdoor Advert., Inc. v. Town of Orange, Connecticut*, 303 F.3d 450, 451 (2d Cir. 2002).

The 2021 repeal of the challenged regulations extinguished any claims of currently existing harm to the plaintiffs. The 2020 rules are no longer operate, and there is no pending action that would cause them to operate in the future. There is no reason to believe that DOE will not follow the law or the instructions of the Fifth Circuit in its reconsideration, and so there is no reason to believe that DOE will issue new final rules that would be unaffected by the 2021 repeal. See *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (per curiam) (concluding that the "mere possibility" of "potential future injury" was "too speculative to avoid mootness" because it was "neither actual nor threatened at [the] time"). What was described in the motion for abeyance as a mere "possibility"—even though what was needed was more than a speculative possibility to not be moot—that the Fifth Circuit decision could vacate the repeal, that possibility is now far less likely to occur. For the foreseeable future, Plaintiffs are not harmed by the 2021 repeal that will remain in effect.

Although the Petitioners had standing when this case was started, it must be "likely, as opposed to merely speculative, that [their] injury will be redressed by a favorable decision," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), for them to retain an interest in the outcome of this case.

There is nothing this Court can do that will "presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."

*Delaware Riverkeeper Network v. New York State Dep't of Env't Conservation*, 788 F. App'x 65, 66 (2d Cir. 2019) (citing *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019)) (internal quotation marks and citations omitted). For instance, this Court previously held a case moot when the underlying construction for a challenged permit had already been completed and was set to expire in less than a month. *Id.*

For these reasons, we ask that this case be dismissed as moot.

Dated: January 18, 2024                    Respectfully submitted,

                                           /s/ *Devin Watkins*
                                           Devin Watkins
                                           Dan Greenberg
                                           COMPETITIVE ENTERPRISE INSTITUTE
                                           1310 L Street NW, 7th Floor
                                           Washington, DC 20005
                                           (202) 331-1010
                                           devin.watkins@cei.org
                                           *Counsel for Intervenors*

**RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and D.C. Cir. Rule 26.1, Intervenors Competitive Enterprise Institute and FreedomWorks Foundation provides the following corporate disclosure statement.

The Competitive Enterprise Institute ("CEI") is a nonprofit, nonstock corporation organized under the laws of the District of Columbia. CEI has no parent corporation, and no publicly held company owns 10 percent or more of its stock.

The FreedomWorks Foundation is a nonprofit, nonstock corporation organized under the laws of the District of Columbia. FreedomWorks Foundation has no parent corporation, and no publicly held company owns 10 percent or more of its stock.

/s/ *Devin Watkins*
Devin Watkins

## CERTIFICATE OF SERVICE

I certify that on January 18, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 18, 2024

Respectfully submitted,

/s/ *Devin Watkins*
Devin Watkins

# Exhibit A

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2024

Lyle W. Cayce
Clerk

———————

No. 22-60146

———————

STATE OF LOUISIANA; STATE OF ALABAMA; STATE OF ARKANSAS; STATE OF KENTUCKY; STATE OF MISSOURI; STATE OF MONTANA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF UTAH,

*Petitioners*,

*versus*

UNITED STATES DEPARTMENT OF ENERGY; JENNIFER GRANHOLM, *Secretary, U.S. Department of Energy*,

*Respondents*.

———————————————————

On Petition for Review of an
Order of the Department of Energy
Agency No. EERE-2021-BT-STD-0002
87 Fed. Reg. 2673 (Jan. 19, 2022)

———————————————————

Before CLEMENT, OLDHAM, and WILSON, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

In 2022, the Department of Energy tightened the regulatory regime surrounding America's dishwashers and laundry machines. Petitioners sued. The Department's actions were arbitrary and capricious. So we grant the petition and remand to the Department.

I.

In 2018, the Competitive Enterprise Institute ("CEI") submitted a petition for rulemaking to the Department of Energy ("DOE" or the "Department"). *See* 5 U.S.C. § 553(e) ("Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."); *see also* Petition for Rulemaking on a New Product Class of Fast Dishwashers, 83 Fed. Reg. 17771 (Mar. 21, 2018) ("CEI Petition"). According to CEI, the Department's burdensome energy regulations made dishwashers incapable of, well, washing dishes. CEI asked the Department to define a new class of dishwashers under the Energy Policy and Conservation Act of 1975, Pub. L. No. 94-163, 89 Stat. 871, codified (as amended) at 42 U.S.C. §§ 6201 *et seq.* ("EPCA"). CEI proposed that the new class should be comprised of dishwashers with a normal cycle duration of under one hour. *See* 42 U.S.C. § 6295(a)(2) (empowering the DOE to define new classes of regulated appliances). CEI anticipated that the new class might offer better performance than currently available machines in part because it would not need to comply with the energy and water restrictions otherwise applicable to consumer dishwashers today. *See* CEI Petition, 83 Fed. Reg. at 17776.

DOE responded favorably to CEI's petition. It published a Notice of Proposed Rulemaking ("NPRM") under the Administrative Procedure Act ("APA"). *See* NPRM, 84 Fed. Reg. 33869 (July 16, 2019). The NPRM proposed the new dishwasher class that CEI had requested. *See ibid.* In October 2020, the DOE adopted a final rule defining the class as "standard residential dishwashers with a cycle time for the normal cycle of one hour or less from washing through drying." *See* Establishment of a New Product Class for Residential Dishwashers, 85 Fed. Reg. 68723 (Oct. 30, 2020) (the "2020 Dishwasher Rule").

No. 22-60146

On its own initiative, the Department then decided to take analogous action on laundry machines. *See* Notice of Proposed Rulemaking, 85 Fed. Reg. 49297 (Aug. 13, 2020) ("2020 Laundry NPRM"). DOE in December 2020 released a final rule creating new classes of "top-loading consumer [i.e., residential] clothes washers and consumer clothes dryers" with a "normal cycle time of less than 30 minutes." *See* Establishment of New Product Classes for Residential Clothes Washers and Consumer Clothes Dryers, 85 Fed. Reg. 81359 (Dec. 16, 2020) (the "2020 Laundry Rule"). DOE also created a class of "front-loading" residential washers with a normal cycle under 45 minutes. *Id.* at 81359–60. DOE explained that both of its 2020 rules "re-affirmed the Department's recognition of cycle time as a valuable consumer utility." *Id.* at 81361.

On the day of his inauguration, President Biden issued an Executive Order directing DOE and other agencies to reconsider certain rules, including the 2020 Dishwasher Rule and the 2020 Laundry Rule. *See* Exec. Order No. 13,990, 86 Fed. Reg. 7037 (Jan. 20, 2021); *see also Fact Sheet: List of Agency Actions for Review*, White House (Jan. 20, 2021), https://perma.cc/9MWM-EWQ3. In August 2021, the Department issued a new NPRM, this time proposing to delete the appliance classes created by the 2020 Rules. *See* Notice of Proposed Rulemaking, 86 Fed. Reg. 43970 (Aug. 11, 2021). A new final rule, which we call the Repeal Rule, was issued in January 2022. It revoked both the 2020 Dishwasher and the 2020 Laundry Rules. *See* Final Rule, 87 Fed. Reg. 2673 (Jan. 19, 2022) (the "Repeal Rule").

No. 22-60146

A group of States, led by Louisiana, petitioned our court for review of the Repeal Rule.[1]

## II.

"Jurisdiction is always first." *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021) (alteration adopted). We (A) begin with the Constitution's jurisdictional requirements. Then we (B) explain that at least one State properly invoked our jurisdiction.

## A.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Ibid.* (quotation omitted). One party with standing satisfies the constitutional requirement. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[W]hen there are multiple plaintiffs[,] [a]t least *one plaintiff* must have standing to seek each form of relief requested." (emphasis added)).

To establish constitutional standing, a plaintiff must show an "injury in fact" that is "fairly traceable" to the defendant's action and "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The States assert several theories of standing. DOE disputes all of them. We find the States succeed on their first theory and therefore decline to reach their others.

---

[1] The States are Alabama, Arizona, Arkansas, Kentucky, Louisiana, Missouri, Montana, Oklahoma, South Carolina, Tennessee, Texas, and Utah. Arizona subsequently dropped out of the litigation.

No. 22-60146

This first standing theory advanced by the States relies on *Weissman v. National Railroad Passenger Corporation*, 21 F.4th 854 (D.C. Cir. 2021). In *Weissman*, the D.C. Circuit explained that the "lost opportunity to purchase" products precluded by regulation constitutes an injury in fact. *Id.* at 857. The D.C. Circuit, reviewing forty years' worth of administrative law cases, concluded that compression in market availability of "desirable features" represents an injury to participants in the relevant market. *Id.* at 858–59. A market participant with many choices is advantaged relative to a participant with fewer choices, and market participants are therefore injured when their choices are constrained by regulation. *See also, e.g.*, *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1281 (D.C. Cir. 2012); *Orangeburg v. FERC*, 862 F.3d 1071, 1077–78 (D.C. Cir. 2017); *Chamber of Com. v. SEC*, 412 F.3d 133, 138 (D.C. Cir. 2005); *Consumer Fed'n of Am. v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003); *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 112–13 (D.C. Cir. 1990); *Ctr. for Auto Safety v. NHTSA*, 793 F.2d 1322, 1324 (D.C. Cir. 1986); *Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1246–47 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 340 (1984).

DOE gives us no reason to depart from this long-held view of our sister circuit. Instead, it argues that federal standing doctrine should embrace a Government-always-wins rule. Its argument goes like this:

- DOE's Repeal Rule precluded manufacturers from making dishwashers or laundry machines under the 2020 Rules;

- Because no manufacturer had a chance to make the new machines, the States cannot show they would purchase the never-made machines;

- Therefore, no one could ever have standing to challenge the Repeal Rule because no one could ever purchase the nonexistent products.

Red Br. 16. Heads the Government wins; tails petitioners lose.

We agree with the D.C. Circuit, which has rejected similar arguments by agency defendants. Consider *Center for Auto Safety*. In that case, the petitioners argued that the National Highway Traffic Safety Administration ("NHTSA") should have set more stringent fuel standards, and that NHTSA's failure to do so meant the petitioners would lose the opportunity to purchase the efficient vehicles that would have been produced in a more highly regulated world. *Ctr. for Auto Safety*, 793 F.2d at 1332. NHTSA there, like DOE here, argued that the agency's action did nothing to alter the choices available to the petitioners at the immediate moment. *Ibid.* But the court rejected that position, holding that the petitioners "plainly" had standing because the choices available to them would shift in response to the agency action the petitioners contested. *Id.* at 1324.

Likewise in *Competitive Enterprise Institute*, the petitioners complained that an agency's regulations might prevent them from buying larger (and presumably less efficient) cars. 901 F.2d at 112. Like DOE here, the parties disputing jurisdiction there argued that the petitioners "[could not] point to any specific car or model that they have been prevented from buying because of [the regulation at issue]." *Id.* at 113. The court promptly rejected that argument, finding that the loss of choice created by regulation represented an injury. *Ibid.* It also held that some showing of a "causal link" between the petitioners' loss of choice and the regulation sufficed for showing redressability. *Id.* at 114; *see also Consumer Fed. of Am.*, 348 F.3d at 1012 (the possibility, not certainty, of a single subscriber purchasing internet service on terms other than what FCC action made available sufficed for injury in fact); *Orangeburg*, 862 F.3d at 1077–80 (lost opportunity to purchase wholesale power on desirable terms constituted an injury in fact, even when substitutable products existed and even where existing contracts precluded a status quo change for five years); *Cf. Chamber of Com.*, 412 F.3d at 138 (finding that challenger to investment fund regulations had standing even

when "there is no evidence a fund of the type in which the Chamber wants to invest would perform better" than those the SEC permitted).

## B.

So too here. DOE's presently existing energy and water requirements would not have applied to the short-cycle appliance classes created in the 2020 Rules and eliminated by the Repeal Rule. That means petitioners have lost the opportunity to purchase faster and more efficacious appliances. The States are injured to the extent of that lost opportunity. And the magnitude of this lost option is not material to the standing inquiry because the inquiry turns only on whether an injury "actually exist[s]." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (describing the concreteness requirement for injury in fact); *Cf. Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 377 (2012) ("Recognizing the responsibility of federal courts to decide claims, large or small, arising under federal law, Congress in 1980 eliminated the amount-in-controversy requirement in federal question . . . cases.").

Here, the States submitted multiple declarations to establish they own, operate, and maintain residential appliances—including dishwashers, clothes washers, and clothes dryers. *See, e.g.*, Decl. of Katherine Goldcamp ¶¶ 5, 7; Decl. of John Patrick Eckler ¶ 4; Decl. of Kurt Sager ¶ 4. The States further established that, given an opportunity, they would replace those appliances with faster ones that are affected by the Repeal Rule. For example, Colonel Sager testified on behalf of the Montana Highway Patrol, which uses residential appliances in its bunkhouses. He stated:

> Appliances including dishwashers, clothes washers, and clothes dryers with faster normal-cycle completion times that also maintain cleaning and drying effectiveness, such as dishwashers that complete a normal cycle in one hour or less, are desirable in the bunkhouse setting. Such features are beneficial and productivity enhancing, since they would permit

faster washing and completion of additional cycles during the
workday.

Sager Decl. ¶ 8. That suffices to trace the State's injury (denial of an
opportunity to purchase the relevant appliances) to the Repeal Rule. *See
Competitive Enter. Inst.*, 901 F.2d at 114. And our ability to review the
lawfulness of the Repeal Rule satisfies redressability. *See ibid.* Therefore, the
States have standing.

III.

Now the merits. While the States make various contentions, we need
only consider one: that the Repeal Rule is arbitrary and capricious. We first
(A) discuss the legal standards. Then we (B) explain why the Repeal Rule is
arbitrary and capricious for two independent reasons.

A.

Section 706 of the APA requires courts to "hold unlawful and set aside
agency action, findings, and conclusions found to be . . . arbitrary, capricious,
an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.
§ 706(2). To decide whether agency action is arbitrary and capricious, we
begin by asking whether "an agency articulated a rational connection
between the facts found and the decision made." *ExxonMobil Pipeline Co. v.
DOT*, 867 F.3d 564, 571 (5th Cir. 2017) (quotation omitted). We then ask if
the agency's reasoning "fails to account for relevant factors or evinces a clear
error of judgment." *Univ. of Tex. M.D. Anderson Cancer Cntr. v. HHS*, 985
F.3d 472, 475 (5th Cir. 2021).

An agency may not "depart from a prior policy *sub silentio* or simply
disregard rules still on the books." *FCC v. Fox Television Stations, Inc.*, 556
U.S. 502, 515 (2009) (citation omitted). Rather, the agency must "display
awareness that it is changing position." *Ibid.* Of course, an agency is not

precluded from revising policy. *See ibid.* But changes require careful comparison of the agency's statements at *T0* and *T1* to ensure that the agency has recognized the change, reasoned through it without factual or legal error, and balanced all relevant interests affected by the change. *Cf. ibid.*

An agency may not advance arguments before us without first presenting them in the administrative record. Rather, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The Supreme Court has repeatedly reaffirmed this prohibition on "convenient litigating position[s]" and "*post hoc* rationalization[s]." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019) (quotation omitted); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action." (citation omitted)); *accord Wages & White Lion Invs., LLC v. FDA*, No. 21-60766, slip op. at 18–19 (5th Cir. Jan. 3, 2024).

Finally, administrative actions cannot survive solely on an agency's demand for policy deference. Of course, if an agency satisfies the various requirements of judicial review, then we will not "substitute [our] own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). But due deference to agencies does not make arbitrary and capricious review "toothless"; rather, it has "serious bite." *Data Mktg. P'ship v. DOL*, 45 F.4th 846, 856 (5th Cir. 2022) (quotation omitted).

## B.

The Repeal Rule falls short of these standards. We (1) discuss the Department's inadequate consideration of important aspects of the energy conservation program. Then we (2) discuss the Repeal Rule's reliance on purported legal error.

1.

The 2022 DOE was required to reasonably consider the relevant issues and reasonably explain its decisions in the Repeal Rule. *Ibid.* It failed to do so. Specifically, it (a) is unclear that DOE has statutory authority to regulate water use in dishwashers and clothes washers. But even if DOE has water-usage authority over the relevant appliances, the Department (b) failed to adequately consider the negative consequences of the Repeal Rule, including the substitution effects of energy-and-water-wasting rewashing, prewashing, and handwashing. And in all events, the 2022 DOE (c) failed to adequately consider the impact of the energy conservation program on "performance characteristics."

a.

In promulgating the Repeal Rule, DOE stated that its energy conservation program must promote "water conservation" and regulate "water use." *See* 87 Fed. Reg. at 2684–85. But it is unclear how or why DOE thinks it has *any* statutory authority to regulate "water use" in dishwashers and washing machines.

The EPCA allows DOE to regulate *energy* use by some products and *water* use by others. Here is how the EPCA defines an "energy conservation standard":

> (A) a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or, *in the case of showerheads, faucets, water closets, and urinals, water use,* for a covered product, determined in accordance with test procedures prescribed under section 6293 of [Title 42]; or
>
> (B) a design requirement for the products specified in paragraphs (6), (7), (8), (10), (15), (16), (17), and (20) of section 6292(a) of [Title 42]; and includes any other requirements

which the Secretary may prescribe under section 6295(r) of [Title 42].

42 U.S.C. § 6291(6) (emphasis added). Thus, DOE can set the maximum "energy use" for most products—including dishwashers and laundry machines. "[O]r" it can set the maximum "water use" for four other, specified products—namely, showerheads, faucets, water closets, and urinals.

The EPCA does not appear to contemplate overlap between the products subject to "energy" regulation and those subject to "water" regulation. Energy first. The EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use." *Id.* § 6291(4). And it defines "energy" as "electricity[] or fossil fuels" or "other fuels." *Id.* § 6291(3). Dishwashers and laundry appliances obviously use "energy" as the EPCA defines that term. So it makes sense that DOE can regulate the amount of energy used by those appliances.

But the statute defines "water use" as "the quantity of water flowing through a showerhead, faucet, water closet, or urinal at point of use." *Id.* § 6291(31)(A). And the four explicitly enumerated water products do not use "energy" as that term is defined in the EPCA. That explains why Congress said "energy use, *or*, . . . water use." *Id.* § 6291(6) (emphasis added). The word "'or' is almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (citation and quotation omitted). So it seems obvious that the statute gave DOE power to regulate energy use for energy-using appliances (like dishwashers and washing machines) *or* water use for non-energy-using appliances (like showerheads, faucets, water closets, and urinals). No part of that text indicates Congress gave DOE power to regulate

water use for energy-using appliances (like dishwashers and washing machines).[2]

The EPCA's history supports this reading. Until 1992, DOE had zero power to regulate water use by *any* product. In that year, Congress added "water use" to DOE's statutory mandate—but only as to showerheads, faucets, water closets, and urinals. *See* Energy Policy Act of 1992, Pub. L. No. 102-486, § 123, 106 Stat. 2776, 2817–21 (adding "water use" to § 6291 and "showerheads," "faucets," "water closets," and "urinals" to § 6292). That further suggests that Congress never gave DOE power to regulate water use by *other* products like dishwashers or laundry appliances.

The EPCA's structure further supports this reading. Section 6293 specifies that testing procedures "shall be reasonably designed to produce test results which measure energy efficiency, energy use, [or] *water use (in the case of showerheads, faucets, water closets and urinals)*." 42 U.S.C. § 6293(b)(3) (emphasis added); *see also id.* § 6293(b)(4) (materially identical text). Section 6295(o) prevents DOE's amended standards from increasing "the maximum allowable energy use, *or, in the case of showerheads, faucets, water closets, or urinals, water use.*" *Id.* § 6295(o)(1) (emphasis added); *see also* 2020 Dishwasher Rule, 85 Fed. Reg. at 68735–36 (emphasizing the textual distinction between energy use and water use in subsection (o)); 2020 Laundry Rule, 85 Fed. Reg. at 81369–70 (same). And § 6295(o)(2)(A) reaffirms that new standards "shall be designed" to maximize

---

[2] Nor does it appear that DOE's water-use regulations fall within the EPCA's conception of "design requirements" under 42 U.S.C. § 6291(6)(B). To the contrary, the statute's immediately preceding subsection covers water use as a "performance standard," while also limiting its reach to water use by "showerheads, faucets, water closets, and urinals." *Id.* § 6291(6)(A). Nor does it appear water use can constitute any "other requirement[]" under § 6295(r) because that subsection concerns only energy use. *See id.* § 6295(r).

"improvement in energy efficiency, *or, in the case of showerheads, faucets, water closets, or urinals, water efficiency*." *Id.* § 6295(o)(2)(A) (emphasis added). All of these provisions explicitly tie DOE's "water use" authority to showerheads, faucets, water closets, and urinals. And the EPCA at no point suggests that DOE can regulate "water use" by products *other than* showerheads, faucets, water closets, and urinals—like dishwashers and clothes washers.

The best argument for extending DOE's authority over water use appears in 42 U.S.C. § 6295(g). That section sets certain statutory maximums for, among other products, dishwashers and laundry machines. And those statutory maximums include water-use metrics. *See, e.g.*, *id.* § 6295(g)(9)(A) (statutorily providing clothes washers manufactured on or after January 1, 2011, must have "a water factor of not more than 9.5"); *id.* § 6295(g)(10)(A) (statutorily providing dishwashers manufactured on or after January 1, 2010, must not use more than 4.5 gallons of water per cycle for compact units and 6.5 gallons for standard units). Given that DOE has power "to amend" conservation standards for clothes washers and dishwashers, *see id.* § 6295(g)(9)(B), (10)(B), might the Department infer that it has power to set new water-use standards that are more draconian than those set by Congress? It appears not. The plain text of the EPCA—including the provisions of § 6295(g)(9)(B) and (10)(B)—says that DOE only has power to amend *energy-use* standards for dishwashers and clothes washers. Congress itself set the water-use standards for those appliances in § 6295(g)(9) and (10). And no part of the statute appears to give DOE power to change them. *See, e.g.*, *City of Arlington v. FCC*, 569 U.S. 290, 317 (2013) (Roberts, C.J., dissenting) ("Agencies are creatures of Congress; an agency

literally has no power to act unless and until Congress confers power upon it." (quotation omitted) (alteration adopted)).

Given all of this, it appears that DOE's assertion of regulatory jurisdiction over water usage in dishwashers and clothes washers is "not in accordance with law" and is "in excess of statutory . . . authority." *See* 5 U.S.C. § 706(2)(A), (C). Yet we need not reach the question. That is for two reasons. First, petitioners do not ask us to so hold. *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). And second, as explained in the following sections, the Repeal Rule was arbitrary and capricious for reasons wholly independent of the statute's water-usage limits.

b.

Even if DOE could consider dishwashers' and clothes washers' "efficiency" in both "energy use" and "water use," the 2020 Rules likely promoted greater efficiency in *both* categories than the Repeal Rule. Assuming both energy conservation metrics are on the table, the States argue, and DOE does not appear to dispute, that one important aspect of that problem is whether appliance regulations *actually reduce* energy and water consumption. Yet the administrative record contains ample evidence that DOE's efficiency standards likely do the opposite: They make Americans use *more* energy and *more* water for the simple reason that purportedly "energy efficient" appliances do not work. *See* CEI Petition, 83 Fed. Reg. at 17776. So Americans who want clean dishes or clothes may use more energy and more water to preclean, reclean, or handwash their stuff before, after, or in lieu of using DOE-regulated appliances.

DOE itself said so in 2020. For example, DOE explained in the 2020 Dishwasher Rule: "Commenters supporting [the 2020 Rules] noted that the existing regulations were counterproductive to the goal of increasing energy efficiency of dishwashers as many consumers end up running their

dishwasher multiple times to get dishes clean." 85 Fed. Reg. at 68732. The DOE appeared to agree with these commenters, saying on its own behalf that "[the new dishwasher product class] could save energy and water by preventing the handwashing of dishes or the running of a dishwasher multiple times for the same load." *Ibid.*

Moreover, the record contains historical evidence that dishwasher cycle time has increased from around one hour at the advent of DOE's conservation program to around two and a half hours in 2020. *See* CEI Petition, 83 Fed. Reg. at 17773–74. DOE does not appear to contest this data; in fact, DOE in 2020 appeared to agree that the frustratingly slow pace of modern dishwashers caused consumer substitution away from dishwashers and toward handwashing. *See* 2020 Dishwasher Rule, 85 Fed. Reg. at 68729; *see also* Record App'x 3 (noting consumers supported efficacious dishwashers by a margin of 2,200 to 16). And nothing wastes water and energy like handwashing: DOE itself estimated in 2011 that handwashing consumes *350% more water and 140% more energy* than machine washing. *See* Record App'x 5 (citing U.S. Dep't of Energy, Technical Support Document Docket EE-2006-STD-0127: National Impact Analysis 16 (2011), https://perma.cc/849K-NCX8).

The Repeal Rule's laundry provisions present a similar substitution problem. In promulgating the 2020 Laundry Rule, DOE said that a new appliance class could prevent consumers from "completing multiple cycles to adequately clean or dry their clothing." 85 Fed. Reg. at 81365. So when DOE proposed the Repeal Rule, commenters naturally objected on the ground that eliminating the better-cleaning appliances would force consumers to "run[] multiple cycles for the same load of laundry." 87 Fed. Reg. at 2684. Other commenters noted that this problem could affect both dishwashers and laundry appliances. *Id.* at 2684–85.

What did DOE say in response? Basically nothing: It acknowledged the concern and moved on. But bare acknowledgment is no substitute for reasoned consideration. We have previously held that "conclusory statements"—like DOE's—do not constitute adequate agency consideration of an important aspect of a problem. *See Corrosion Proof Fittings v. EPA*, 947 F.2d 1201, 1227 (5th Cir. 1991); *see also Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986) ("Stating that a factor was considered, however, is not a substitute for considering it.").

The Repeal Rule appears to rest on DOE's unexplained balancing of evidence. It's a well-worn principle of arbitrary-and-capricious review that an administrative agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quotation omitted). Here, however, the 2022 DOE recognized the facts that undermined its Repeal Rule, cited other facts to suggest the Repeal Rule would conserve water and energy, *see* 87 Fed. Reg. at 2683–85, and then implicitly credited the latter without explaining why. That is the touchstone of arbitrary and capricious agency action.

c.

The EPCA balances energy efficiency with the availability of desirable "performance characteristics." *See* 42 U.S.C. § 6295(o)(4) ("The Secretary may not prescribe an amended or new standard under this section if . . . the standard is likely to result in the unavailability . . . of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same" as otherwise available); *see also id.* § 6295(o)(2)(B)(i)(IV) (instructing DOE to consider "any lessening of the utility or the performance" of an appliance resulting from an efficiency regulation). Thus, appliance performance is an "important aspect" of, or

"relevant factor[]" in, the EPCA's statutory scheme. *State Farm*, 463 U.S. at 42–43; *accord M.D. Anderson*, 985 F.3d at 475.

At least as of 2020, DOE agreed that *cycle time* was an important performance characteristic. After all, that is why DOE *sua sponte* initiated the Laundry Rule. *See* 2020 Laundry NPRM, 85 Fed. Reg. at 49298–99. And in the 2020 Laundry Rule, DOE "re-affirmed the Department's recognition of cycle time as a valuable consumer utility and performance-related feature." 85 Fed. Reg. at 81361; *see also* 2020 Dishwasher Rule, 85 Fed. Reg. at 68726–28 (reiterating DOE's longstanding view that performance is "utility" "accessible to the layperson and based on user operation"); 2020 Laundry NPRM, 85 Fed. Reg. at 49297–300 (DOE discussing why cycle time is a facet of performance); 2020 Laundry Rule, 85 Fed. Reg. at 81362–67 (same); Grant of Petition for Rulemaking, 84 Fed. Reg. 33869, 33872 (July 16, 2019) (same). The Repeal Rule did not recant this position; in fact, it expressly declined to do so. *See* 87 Fed. Reg. at 2682 ("not contending" with fact that cycle time is an important performance characteristic under EPCA).

The Repeal Rule "fails to account" for this "relevant factor[]." *M.D. Anderson*, 985 F.3d at 475. Rather, the 2022 DOE's approach to cycle time is nonsensical. After conceding that cycle time is a relevant performance characteristic, the Repeal Rule then asserts that cycle time is nonetheless "irrelevant" because the Department chose to rely exclusively on the purported illegality of the 2020 Rules. 87 Fed. Reg. at 2682. Then the 2022 DOE said "it nonetheless bears mentioning that" DOE only tests *some* of the settings on dishwashers and laundry machines. *Ibid.* Therefore, DOE concluded, manufacturers are free to deploy *other, non-tested* settings that use as much energy and water as necessary to actually clean consumers' things:

> Most basic models of residential dishwashers, residential clothes washers, and consumer clothes dryers provide multiple cycle options that *are not regulated*, each of which are designed

for different purposes. For instance, a residential dishwasher
may have a quick cycle, heavy cycle, delicates, etc. in addition
to the normal cycle. *These unregulated cycles* provide consumers
options to [sic] their individual needs in the moment.

*Ibid.* (emphases added). The 2022 DOE's point appears to be that its rules
are not worth the paper they are printed on because manufacturers can—
indeed, DOE appears *to invite* them to—evade the standards altogether.

This proves too much and too little. As to the too much, if it were
really true that manufacturers could do whatever they want in "unregulated
cycles" for dishwashers and laundry machines, then DOE would plainly
stand outside the bounds of the EPCA. There is no doubt that DOE must
take into account *some* conservation standards in regulating America's
appliances. *See, e.g.*, 42 U.S.C. § 6291(6)(A) (DOE must promote
"efficiency" in "energy use"). The Department could not invite—as the
text of the Repeal Rule suggests—manufacturers to deploy "unregulated
cycles" that consume 1,000 gallons of water and 1,000 kW of energy to wash
a load of dishes. *See id.* § 6295(g)(10) ("[A] standard size dishwasher [shall]
not exceed 355 kWh/year and 6.5 gallons per cycle"). That is especially true
when the 2022 DOE's entire basis for the Repeal Rule was to enforce the
EPCA's conservation standards. It would be the height of capriciousness to
enforce those standards by inviting manufacturers to ignore them.

As to the too little, the 2022 DOE rests primarily if not exclusively on
the "quick" cycle included on some appliances currently on the market.
Repeal Rule, 87 Fed. Reg. at 2682. As the 2020 DOE explained at length in
the 2020 Laundry Rule, however, quick cycles are not "the normal use
cycle." 85 Fed. Reg. at 81362. Rather, these cycles generally apply only to
"lightly soiled" loads, *id.* at 81365, and so do not adequately assist with
"consumers' normal washing and drying needs," *id.* at 81366. The point of
the 2020 Rules was to "spur manufacturer innovation and push for the

development of short-cycle products, *as the normal cycle*," *i.e.*, in the normal use case. *Ibid.* (emphasis added). The 2020 Dishwasher Rule made similar observations. *See* 85 Fed. Reg. at 68727. The 2020 DOE explained at length why faster appliances *in the normal use case* provide value to consumers. *See id.* at 68730 (Dishwasher Rule discussing at length the inadequate utility of existing quick cycle options); *id.* at 68731 ("DOE reiterates that the 'Quick' cycles available on current dishwasher models do not provide the same utility as the Department's new one hour or less short cycle product class."). The Repeal Rule does not explain why "quick" buttons would provide an efficacious substitute.

In sum, DOE (1) recognized that cycle time is important; (2) said cycle time was "irrelevant"; (3) said none of this matters because manufacturers and consumers can evade the EPCA by relying on "unregulated" appliance settings; and (4) pointed to existing "quick" cycles that do not address the foundational concerns underlying the 2020 Rules. To explain the 2022 DOE's reasoning is to explain that it failed to "examine the relevant data and articulate a satisfactory explanation" for its impact on appliance performance, a quality Congress deemed important in § 6295(o). *See State Farm*, 463 U.S. at 43.

2.

Instead of focusing on appliance performance, the Repeal Rule instead rested on the 2022 DOE's belief that the 2020 Rules "violated the EPCA." 87 Fed. Reg. at 2684. We first (a) explain that controlling Supreme Court precedent makes that insufficient to justify the Repeal Rule. Then we (b) consider DOE's failure to consider alternatives to the Repeal Rule.

a.

The Repeal Rule contended the 2020 Rules were "invalid." *Ibid.* But in rescinding a prior action, an agency cannot simply brand it illegal and move on.

Consider, for example, the Supreme Court's decision in *Regents*. In that case, the Secretary of Homeland Security in the Obama Administration promulgated two programs to award government benefits to undocumented aliens. *See DHS v. Regents*, 140 S. Ct. 1891, 1901–02 (2020) (describing Deferred Action for Childhood Arrivals ("DACA") and Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA")). DHS created both programs via memorandum and without any of the APA's procedural safeguards. *See ibid.* That legal problem doomed DAPA. *See Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by equally divided Court*, 579 U.S. 547 (2016) (per curiam). And it led to an injunction against DACA. *See Regents*, 140 S. Ct. at 1902 (citing injunction). So shortly after President Trump's inauguration, his Secretary of Homeland Security issued a new memorandum rescinding the first memorandum. Her reason for the rescission? The programs were "unlawful." *Id.* at 1910.

The Supreme Court held that the recission was arbitrary and capricious *even if* DACA and DAPA were unlawful. Why? Because "deciding how best to address a finding of illegality moving forward can involve important policy choices." *Ibid.* For example, the Court noted, DACA involved two different components—one that granted government benefits to the children of undocumented aliens, and another that granted government forbearance from enforcing the immigration laws against those individuals. *Id.* at 1911. Perhaps the Trump Administration was correct that the benefits were illegal—but that did not justify its decision to rescind the programs *in toto*. *Id.* at 1911–12. Rather, the Court held that even when an

agency determines that its previous decision was illegal, it *still* must go on to consider alternatives to simply revoking the prior action. *Id.* at 1912 (citing *State Farm*, 463 U.S. at 51).

So too here. Even if the 2020 Rules were illegal, the Department did not consider alternatives to repealing them *in toto*.[3] For example, some of the purported problems with the 2020 Rules could be fixed by promulgating energy conservations standards—a remedy the 2022 DOE never considered. *See infra* Part III.B.2.b. And even if the 2020 Rules were broken beyond repair, the 2022 DOE conceded that appliance performance is a relevant performance characteristic—and yet explored no alternatives to promote it.

b.

The Repeal Rule was required to "consider the 'alternatives' that are 'within the ambit of existing policy.'" *Regents*, 140 S. Ct. at 1913 (alteration adopted) (quoting *State Farm*, 463 U.S. at 51). A policy's failure to fulfill this requirement renders that policy arbitrary and capricious, even if this defect is sole and "alone." *Id.* at 1913.

Here, several alternatives fell "within the ambit" of the 2020 Rules, but DOE ignored all of them. For example, the 2022 DOE claimed the 2020 Rules were invalid because they failed to include energy conservation standards under § 6295(q). Repeal Rule, 87 Fed. Reg. at 2684. Even assuming this objection was well-taken, one solution would have been to publish the missing conservation standards.

---

[3] *Regents* applies here even though DOE rescinded the rules via a new rulemaking, rather than a memorandum, because DOE still failed to consider alternatives. Simply engaging in a more formalized process does not absolve the agency of its duty to consider alternatives.

No. 22-60146

The 2022 DOE likewise claimed the 2020 DOE violated the EPCA's anti-backsliding provision in § 6295(o)(1). The anti-backsliding provision generally prohibits DOE from issuing new energy- and water-conservation standards that are more lenient than legacy standards. 42 U.S.C. § 6295(o)(1). Even assuming this objection was well-taken (and that DOE could regulate water use), DOE could have required the new short-cycle appliances to meet the same energy- and water-conservation standards that older, legacy appliances must meet. At least in that latter scenario, DOE would have had flexibility to adjust the go-forward standards for the short-cycle and legacy classes in a fashion that furthers the performance interests discussed by the EPCA in § 6295(o)(4) and § 6295(o)(2)(B)(i)(IV).

Instead, the 2022 DOE simply threw up its hands and used § 6295(q) and (o)(1) as excuses to eliminate short-cycle appliances altogether. *See* Repeal Rule, 87 Fed. Reg. at 2678–82. The Repeal Rule expressly confesses that it did not weigh the risks and benefits of eliminating short-cycle appliance classes. That makes this case indistinguishable from *Regents*. *See* 140 S. Ct. at 1913.

It is no answer to claim, as the Repeal Rule does, that the 2022 DOE lacked data and "time and resources" to develop new conservation standards for the 2020 Rules. *See* 87 Fed. Reg. at 2683. That is for two reasons. First, the Government tried this same move in *Regents* and failed. In that case, the Government emphasized that repealing DAPA and DACA would create serious "costs and burdens." *Regents*, 140 S. Ct. at 1903. But the Supreme Court held that "costs and burdens" do not excuse the Government from considering the full panoply of alternatives to its chosen action in repealing DACA and DAPA. *See id.* at 1914–15.

Second, DOE's time-and-resource concerns in 2021 are contradicted by the Department's own statements *mere weeks* earlier. In December 2020,

DOE insisted that it had both the intent and the requisite means to develop new conservation standards. *See* 2020 Laundry Rule, 85 Fed. Reg. at 81361 (discussing DOE's plans for conservation standards for new product classes); *id.* at 81366 (similar); *id.* at 81369 (similar); *id.* at 81372–73 (similar). Yet in January of 2021, DOE started the process to repeal the 2020 Rules and to abandon the new conservation standards it planned in December 2020. It did so without any acknowledgment—let alone explanation—of the evidence in the administrative record that "utterly refute[d]" its newfound time-and-resource concerns. *Michigan v. EPA*, 576 U.S. 743, 760 (2015) (citation and quotation omitted). If DOE wanted to change its estimates for the time-and-resource burdens, it needed to offer evidence in the record to support its *volte face. See State Farm*, 463 U.S. at 40. We cannot affirm agency action on the basis of "conclusory" statements. *Texas v. Biden*, 10 F.4th 538, 555 (5th Cir. 2021); *see also United Techs. Co. v. DOD*, 601 F.3d 557, 562 (D.C. Cir. 2010) (quotation omitted).

The Repeal Rule cannot stand solely on the 2022 DOE's view that the 2020 Rules were "invalid."

\*　　\*　　\*

In sum, it is unclear that DOE has any statutory authority to regulate water use in dishwashers and clothes washers. But even assuming the Department has that authority, the Repeal Rule is arbitrary and capricious for two principal reasons. (1) It failed to adequately consider appliance performance, substitution effects, and the ample record evidence that DOE's conservation standards are causing Americans to use more energy and water rather than less. (2) It rested instead on DOE's view that the 2020 Rules were legally "invalid"—but even if true, that does not excuse DOE from considering other remedies short of repealing the 2020 Rules *in toto.*

IV.

Finally, a word on DOE's litigating position in our court. It is well settled that "[a]n agency must defend its actions based on the reasons it gave when it acted." *Regents*, 140 S. Ct. at 1909. And the agency may not rely on "impermissible *post hoc* rationalizations" for its actions. *Ibid.*; *see also, e.g.*, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988); *Chenery*, 318 U.S. at 94.

As we have already described at length, *see supra* Part III.B.2, the Repeal Rule justified the 2022 DOE's action on the 2020 DOE's purported violation of the EPCA's substantive provisions. In our court, however, DOE pretends it repealed the 2020 Rules because it committed merely *procedural* errors by failing "to adequately consider the [EPCA's] requirements." Red Br. 2; *see also id.* at 6, 22, 29, 38 (same).

It borders on frivolous to say the 2020 Rules failed to consider § 6295(o)(1) and (q). The 2020 Rules considered these sections *extensively*. *See, e.g.*, 2020 Laundry Rule, 85 Fed. Reg. at 81361–68 (discussing § 6295(q)); *id.* at 81368–70 (discussing § 6295(o)(1)); 2020 Dishwasher Rule, 85 Fed. Reg. at 68726–34 (engaging with § 6295(q)); *id.* at 68734–37 (analyzing § 6295(o)(1)).

But more to the point, that is not what the Repeal Rule itself said. The Repeal Rule itself said the EPCA's provisions in § 6295(o)(1) and (q) *substantively* precluded the 2020 Rules. The Repeal Rule must stand or fall on that position—and not DOE's new invocation of procedural error in its briefs before our court. And even if those rules did contravene the EPCA, the Repeal Rule would still be invalid because the 2022 DOE did not consider alternatives to simply repealing the old rules. *See supra* Part III.B.2.

And in any event, even if we took seriously DOE's litigation position, it would only further doom the Repeal Rule. If the 2020 Rules really were

procedurally invalid because they failed to adequately consider the EPCA, then one obvious solution to that problem would be to supply the missing consideration. *See supra* Part III.B.2.b (holding DOE must consider alternatives). Instead, the Department amplified its capriciousness by throwing the baby out with the bath water.

*   *   *

For the foregoing reasons, the petition for review is GRANTED. And the matter is REMANDED to DOE for further proceedings consistent with this opinion.